**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **THERESA A. STROUSE,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **04-CV-2797** |
| **v.** | : | |
| | : | **JUDGE VANASKIE** |
| **MICHAEL J. ASTRUE,** | : | |
| **COMMISSIONER OF SOCIAL** | : | |
| **SECURITY,** | : | |
| | : | |
| **Defendant** | : | |


### MEMORANDUM

This matter is before the Court on Plaintiff's objections to a Magistrate Judge's

Report and Recommendation, proposing that Defendant's motion to dismiss for lack of

jurisdiction be granted.  Defendant, the Commissioner of Social Security, had dismissed

Plaintiff Theresa A. Strouse's second application for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §§ 401, et seq., without conducting an evidentiary

hearing, based upon the doctrine of *res judicata*.  Asserting that she presented a colorable

constitutional challenge to the administrative agency's summary dismissal of her claim, Mrs.

Strouse contends that judicial review of the Commissioner's decision remains available.

Having carefully reviewed the record *de novo*, and finding that the denial of an evidentiary

hearing on Ms. Strouse's second application for disability insurance benefits did not abridge

any constitutional rights, I will grant the motion to dismiss.

## I. **BACKGROUND**

The salient events pertaining to this matter are not in dispute, and are set forth in

chronological order as follows:

● In May of 1995, Ms. Strouse was involved in a work-related accident that

resulted in amputations of parts of four fingers on her right hand.  She subsequently

underwent surgical repair with re-implantation of the amputated fingers.  (Administrative

Law Judge ("ALJ") Amended Decision of December 16, 2003, at 3,attached as Exhibit 1 to

the Declaration of Robin M. Marquis ("Marquis Declaration"), Dkt. Entry 5-2, at 10.)[1]

● Ms. Strouse, who was 32 years old at the time of her injury, was last insured

for disability insurance benefits on December 31, 2000.  (Id. at 1, Dkt. Entry 5-2, at 8.)

● On March 23, 2001, Ms. Strouse filed an application for disability insurance

benefits and supplemental security income payments.  (Id.)  Plaintiff attributed disability to

the injury to her fingers on her right hand and to Huntington's Chorea.[2]  (Id. at 2, Dkt. Entry

_____

[1]Citation to the record includes an identification of the document in question as well as an identification of the page in the Court's electronic record where the information is found.

[2] "Chorea" refers to the jerking, uncontrollable movements of limbs, trunk, and face that accompany Huntington's Disease.  Neurology Channel, http://www.neurologychannel.com/huntingtons (last visited April 25, 2007).  Huntington's Disease "results from genetically programmed degeneration of brain cells, called neurons, in certain areas of the brain.  This degeneration causes uncontrolled movements, loss of intellectual faculties, and emotional disturbance."  National Institute of Neurological Disorders and Strokes, http://www.ninds.nih.gov/disorders/huntington/huntington.htm (last visited April 25, 2007).

5-2, at 9.)

- On March 13, 2003, an evidentiary hearing on Plaintiff's claim was conducted by an ALJ.  His decision denying the application was issued on December 16, 2003.  (Id.)

- In the course of his decision, the ALJ provided the following summary of Ms. Strouse's testimony:

> Ms. Strouse testified that she had an accident at work that resulted in four fingers on her right hand being reattached.  Ms. Strouse testified that she can use her hand somewhat.  She testified that she cannot make a fist and that her first finger is amputated at the knuckle.  Ms. Strouse testified that she didn't work because she got a settlement ($35,000) from Worker's Compensation, and that she didn't look for a job.  Ms. Strouse testified that the only thing that was wrong with her prior to her date last insured was her non-dominant hand.  When asked why she applied for benefits in 2001, she said that she was diagnosed with Huntington's Disease in January.

(Id. at 5, Dkt. Entry 5-2, at 12; emphasis added.)

- The ALJ found that the injury to Ms. Strouse's right hand did not preclude her from engaging in a limited range of light duty work.  (Id. at 8, Dkt. Entry 5-2, at 15.)  As to the impact of Huntington's disease, the ALJ wrote:

> [T]he claimant testified that she was recently diagnosed with Huntington's disease, but . . . there was very little medical evidence of Huntington's disease, which was after her date last insured.

(Id. at 5, Dkt. Entry 5-2, at 12.)

- Accompanying the ALJ's decision of December 16, 2003 was a notice that

informed Ms. Strouse of appeal rights.  (Id., Dkt. Entry 5-2, at 5-7.)  Specifically, Ms.

Strouse was informed that she could file an appeal with the Appeals Council, provided she

did so within sixty days.  (Id.)  She was also informed that she could submit new evidence

to the Appeals Council to consider in connection with her request for review.  She was

further informed that she could file a new application for disability benefits.  Specifically, the

Notice provided:

> You have the right to file a new application at any time, but filing a new
> application is not the same as appealing this decision.  If you disagree with
> my decision and you file a new application instead of appealing, you might
> lose some benefits, or not qualify for any benefits.  My decision could also be
> used to deny any new application for insurance benefits, if the facts and
> issues are the same.  So, if you disagree with this decision, you should file an
> appeal within sixty (60) days.

(Id. Dkt. Entry 5-2, at 6; emphasis added.)

● On February 5, 2004, the Appeals Council affirmed the ALJ's denial of

benefits.  Ms. Strouse did not seek judicial review of this decision.  The Appeals Council

ruling thus became the final decision on Ms. Strouse's claim, as she did not seek judicial

review

● On February 4, 2004, the day before the Appeals Counsel affirmed the denial

of benefits, Ms. Strouse filed a second application for disability insurance benefits, alleging

that she became disabled on September 20, 2000.  (Exhibit 2 to the Marquis Declaration,

Dkt. Entry 5-2, at 17-20.)

4

● By notice dated April 18, 2004, Ms. Strouse was informed that her second application had been denied because it concerned "the same issues which were decided when an earlier claim was denied." (Exhibit 3 to the Marquis Declaration, Dkt. Entry 5-2, at 21.) Ms. Strouse's request for reconsideration was denied on June 14, 2004, with the explanation that her application concerned the same issues considered by the agency in denying her first application, and she had not presented "any information which would cause us to change our earlier decision." (Exhibit 5 to the Marquis Declaration, Dkt. Entry 5-2, at 28.)

● Ms. Strouse then requested a hearing before an ALJ. (Exhibit 6 to the Marquis Declaration, Dkt. Entry 5-2, at 34.) By decision dated September 13, 2004, the ALJ denied her request for a hearing, invoking the *res judicata* provision set forth in 20 C.F.R. § 404.957(c)(1).[3] In denying Ms. Strouse's request for a hearing, the ALJ acknowledged that

---

[3]Section 404.957(c)(1) provides:

An administrative law judge may dismiss a request for a hearing under any of the following conditions:
(c) The administrative law judge decides that there is cause to dismiss a hearing request entirely or to refuse to consider any one or more of the issues because -
    (1) The doctrine of *res judicata* applies in that we have made a
    previous determination or decision under this subpart about
    your rights on the same facts and on the same issue or issues,
    and this previous determination or decision has become final by
    either administrative or judicial action.

the second application for benefits was accompanied by a January 30, 2004 report of a

specialist in neurology.  The ALJ found that this "new" evidence did not warrant reopening

the adverse decision, explaining:

> Dr. Isayev's report does not provide any information regarding
> the claimant's condition on or before December 31, 2000 [the
> date last insured] and is not material to the issues raised by
> claimant's request fo a hearing. . . .
>
> Social Security Administration Regulation No. 4 further provides
> that an Administrative Law Judge may dismiss a claimant's
> request for hearing when the doctrine of <u>res judicata</u> applies.
> <u>Res judicata</u> is present when the claimant has had a previous
> determination or decision about rights on the same facts and on
> the same issue or issues, and this previous determination or
> decision has become final by either administrative or judicial
> action.  (20 CFR §404.957(c)(1)).
>
> The claimant's current request for hearing involves the rights of
> the same claimant on the same facts and on the same issues
> which were decided in the final and binding decision dated
> December 16, 2003, made on the prior application.
> Accordingly, the claimant's request for hearing filed on August
> 12, 2004, is dismissed.

(Exhibit 7 to the Marquis Declaration, Dkt. Entry 5-2, at 38.)

●      On November 23, 2004, the Appeals Council affirmed the ALJ's dismissal of

the second application for benefits.  (Exhibit 8 to the Marquis Declaration, Dkt. Entry 5-2, at

41-42.)

●      On December 23, 2004, Ms. Strouse commenced this action for judicial

review of the denial of her second application for disability insurance benefits.

6

## II. <u>DISCUSSION</u>

Judicial review of denial of disability insurance benefits is provided in 42 U.S.C. § 405(g), which, in pertinent part, provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced with in sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

In Califano v. Sanders, 430 U.S. 99, 108 (1977), the Court ruled that because Congress had limited judicial review "to a particular type of agency action, a 'final decision of the [Commissioner] made after a hearing,'" a claimant could not seek judicial review of an administrative decision refusing to reopen a claim for benefits.  Justice Brennan, writing for the Court, explained that "an interpretation that would allow a claimant judicial review simply by filing and being denied a petition to reopen his claim would frustrate the congressional purpose, plainly evidenced in [42 U.S.C. § 405(g)], to impose a sixty-day limitation upon judicial review of the [Commissioner's] final decision on the initial claim for benefits."  Id.

Consistent with this rationale, the Court of Appeals for the Third Circuit, as well as the courts of appeals of a number of other circuits, have held that "dismissals of 'new' claims that effectively repeat previously denied claims and which are therefore held by the [Commissioner] to be *res judicata* are not reviewable."  Stauffer v. Califano, 693 F.2d 306, 307 (3d Cir. 1982)(citing Davis v. Schweiker, 665 F.2d 934 (9th Cir. 1982); Ellis v.

7

Schweiker, 662 F.2d 419 (5th Cir. 1981); Bagby v. Harris, 650 F.2d 836 (6th Cir. 1980);

Rios v. Secretary of Health, Education and Welfare, 614 F.2d 25 (1st Cir. 1980).

In Sanders the Court recognized that judicial review may remain available,

notwithstanding the absence of a "final decision of the Commissioner made after a hearing,"

if the claimant presents a colorable constitutional challenge to the Commissioner's decision.

430 U.S. at 109.  For example, a colorable due process claim may be presented where the

claimant contends that she received misleading or inadequate information concerning her

appeal rights.  See Melloy v. Shalala, Civ. A. No. 94-1375, 1994 WL 689963, at *5 (E.D. Pa.

Dec. 7, 1994).  Miss Strouse, however, does not complain of inadequate notice of appeal

rights.  Nor does she contend that she was somehow misled by the Commissioner with

respect to her rights to further administrative and/or judicial review.  In this regard, the

Notice accompanying the December 16, 2003 ALJ decision informed her of the availability

of direct review, as well as warned her that a subsequent application could be denied "if the

facts and issues are the same."  (Exhibit 1 to the Marquis Declaration, Dkt. Entry 15-2, at 6.)

Ms. Strouse, instead, claims that she is entitled to judicial review because she "has

asserted a colorable constitutional claim, namely that she was denied her right to present

evidence in support of her claim in direct violation of the Equal Protection Clause of the 5th

Amendment."  (Objections to Report and Recommendation, Dkt. Entry 12, at ¶ 3.)  Ms.

Strouse, however, fails to explain how the refusal to conduct an evidentiary hearing in this

matter violates her right to equal protection of the laws, or otherwise constitutes a denial of due process.

"The mere allegation of a due process violation is not sufficient to raise a 'colorable' constitutional claim to provide subject matter jurisdiction." Banks v. Chater, 949 F. Supp. 264, 266 (D. N.J. 1996).  If that were the case, then any decision of the Commissioner to dismiss a claim without conducting an evidentiary hearing would be subject to judicial review.  Accordingly, it has been recognized that the refusal to conduct a hearing when an application is procedurally barred does not implicate constitutional concerns.  Lear v. Apfel, No. Civ. A. 00-5517, 2001 WL 179861 (E.D. Pa., Feb. 22, 2001).

Plaintiff nonetheless insists that the Court of Appeals for the Third Circuit has held that the submission of new evidence in support of a successive application for disability insurance benefits precludes the application of *res judicata*, citing Purter v. Heckler, 771 F.2d 682 (3d Cir. 1985).  Purter, however, is distinguishable.  First, unlike the matter *sub judice,* the Commissioner did not deny the successive application for disability insurance benefits in Purter on *res judicata* grounds.  Instead, it was the district court in the first instance that concluded that a prior district court opinion affirming the denial of the plaintiff's second application for benefits was entitled to *res judicata* effect.  Id. at 689.  Moreover, unlike this case, the Commissioner in Purter actually considered the merits of the third application for benefits, conducting a full hearing and receiving some thirty exhibits into

9

evidence.  Id. at 695.  Our Court of Appeals found that the record revealed a *de facto*

reopening of the earlier applications.  Id.  Thus, Purter did not involve a refusal to reopen an

earlier application, but instead concerned an actual reopening of an earlier claim, with

judicial review of the merit-based decision remaining available.  Id. at 693. Furthermore,

unlike this matter, the record before the court in Purter indicated that the Commissioner

"consistently applied improper legal standards to the merits of each of claimant's three

claims for benefits."  Id. at 696.  Here, by way of contrast, Plaintiff has made no showing

that an improper legal standard was applied in the consideration of her initial application for

benefits.  Finally, the third application for benefits in Purter specifically attributed disability to

alcoholism, a condition that had been discussed in the earlier applications in the context of

the claimant's other alleged impairments, but which had not been claimed previously to be

the cause of disability.  Id. at 690-91.  It was in this context that the Court of Appeals

considered significant the fact that the claimant had presented "new and material evidence

that merits a reconsideration of his earlier claims."  Id. at 696.  In this case, by way of

contrast, Ms. Strouse's first application included the impact of Huntington's Disease, and

the Commissioner properly applied *res judicata* to decline to hold an evidentiary hearing on

the second application for benefits.[4]

---

[4]In dismissing the second application for benefits without conducting an evidentiary
hearing, the ALJ referenced the January 30, 2004 report of Dr. Isayev, a specialist in
neurology.  (Exhibit 7 to the Marquis Declaration, Dkt. Entry 5-2, at 38.)  The ALJ stated that

In [Rogerson v. Secretary of Health and Human Services, 872 F.2d 24, 29 n.5 (3d Cir. 1989),](#) our Court of Appeals explained that Purter, applies only when there has been a *de facto* reopening of an earlier claim by the Commissioner.  The Court further explained that "[a] constructive reopening occurs when the '[Commissioner] has reviewed the entire claim and has rendered a final decision on the merits after a hearing.'" [Id.](#)  Because the Commissioner in Rogerson determined that additional evidence submitted by the claimant was not material to the question of whether the claimant was disabled prior to the date last insured, and thus did not warrant a hearing on a successive application for benefits, the court held that judicial review of the dismissal of the second application was unavailable. [Id. at 29-30.](#)  The court also ruled that because the claims in the successive application were "essentially identical to those made in prior claims, the application of *res judicata* without a

_____

Dr. Isayev's report indicated that Huntington's Disease was suspected in June, 2002.  The ALJ further reported that Dr. Isayev's report did not provide any information regarding symptoms of Huntington's Disease that would have rendered Plaintiff unable to work prior to the date last insured, December 31, 2000.  Plaintiff does not contend that the ALJ mischaracterized the January 30, 2004 report of Dr. Isayev.  Instead, Plaintiff asserts that, if she had been granted an evidentiary hearing,  she "would have presented a new Narrative Report from Dr. Isayev that related [her] current problems with her problems before 2000." (Brief in Support of Objections to the Report and Recommendation, Dkt. Entry 13, at 5.) Plaintiff, however, was not entitled to an evidentiary hearing based upon her declared intention to submit additional evidence.  The Commissioner's regulations specifically contemplate reopening an earlier determination, see [20 C.F.R. §§ 404.987-404.989,](#) but it is incumbent upon the claimant to present the appropriate basis for doing so.  In this case, there is no dispute that Dr. Isayev's January 30, 2004 letter report afforded no basis for finding that Huntington's Disease was a disabling condition before December 31, 2000.

hearing does not violate . . . due process of law."  <u>Id.</u>

Ms. Strouse's case is plainly controlled by <u>Rogerson</u>.  Her "new" evidence was found to be not material to the question of whether she was disabled prior to the date last insured. The refusal to hold a hearing or consider the merits of the second application did not deny Plaintiff any rights protected by the Fifth Amendment to the United States Constitution. Thus, this Court has no jurisdiction to review the Commissioner's application of *res judicata* under the circumstances presented here.

## III.   <u>CONCLUSION</u>

For the reasons set forth above, the Commissioner's motion to dismiss will be granted.  An appropriate Order follows.

__s/ Thomas I. Vanaskie__
Thomas I. Vanaskie
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THERESA A. STROUSE,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **04-CV-2797** |
| **v.** | : | |
| | : | **JUDGE VANASKIE** |
| **MICHAEL J. ASTRUE,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

_____NOW, THIS 25th DAY OF APRIL, 2007,** for the reasons set forth in the foregoing

Memorandum, **IT IS HEREBY ORDERED THAT**:

    1.  The Report and Recommendation of Magistrate Judge Blewitt (Dkt. Entry 11) is

**ADOPTED.**

    2.  The Motion to Dismiss (Dkt. Entry 4) is **GRANTED.**

    3.  The Clerk of Court is directed to marks this matter **CLOSED.**

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge
